**Bonzell HARRISON, Appellant,**

v.

**LOCAL 54 OF the AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO.**

**No. 74–2126.**

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) April 11, 1975.

Decided June 18, 1975.

Bonzell Harrison, pro se, appellant.

Stephen A. Sheller, Michael F. Kraemer, Astor, Weiss & Sheller, Philadelphia, Pa., for appellee.

Before McLAUGHLIN, VAN DUSEN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The question on appeal is whether plaintiff's *pro se* complaint, fairly construed, sets forth a claim under the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 401 et seq., so as to withstand a motion to dismiss. Interpreting the complaint as one sounding in libel and slander, the district court dismissed the complaint for lack of subject matter jurisdiction. We affirm.

### I.

This appeal represents the second time this plaintiff has been before us complaining about his relationship with his union. In the earlier action, the district court dismissed the "ambiguous and vague" amended *pro se* complaint for "failing to state a cause of action". *Harrison v. Stout*, Civ. No. 72–1081 (E.D. Pa., Mar. 15, 1973). We affirmed that disposition. *Harrison v. Meany*, 491 F.2d 749 (3d Cir. 1973).

The complaint which is now before us was filed on March 19, 1974. Labeled "Complaint: Libel and Slander," it alleges:

1. Plaintiff states that on may [sic] 11, 1971, Mr. Earl Stout, International Vice President did approach Mr. John H. Keyes, Business Manager of the University of Pennsylvania, and instructed Mr. Keyes not to pay plaintiff for work which plaintiff had completed. This was done maliciously, because plaintiff asserted his rights to earn a living without interference from the union, since the union had improperly suspended plaintiff from union membership, even after the criminal charges were not sustained. (See Exibits [sic] 3, 17, 22, 23, 24, 25, 26 and 27 attached hereto).

2. Plaintiff states that Defendant did give him false information in regards to the date, time and place of the meeting of the Convention Appeals Committee of the 19th International Convention. (See Exibits [sic] 3, 5, 8, 9 and 31 attached hereto).

3. Plaintiff states that Defendant's sole purpose in giving him false information in regards to the date, time and place of the meeting of the Convention Appeals Committee of the 19th International Convention was to confuse and deny plaintiff his right of appeal, and therefore caused a violation of the plaintiff's rights as setforeth [sic] in Article V, Amendment to the United States Constitution as to due process of law. (also see Section 1, 14th Amendment to the United States Constitution). (See Exibits [sic] 2, 3, 4, 5, 6, 8, 9, and 31 attached hereto).

4. Plaintiff states that the Defendant began their [sic] persecution of him because of the efforts on the part of the plaintiff to prevent Local 590, and the District Council # 33 from infringing upon the jurisdiction of Local 54. (See Exibits [sic] 18, 19, 20, 21, 29, and 30 attached hereto).

5. Plaintiff states that District Council # 33, officers of Local 54, and officers of the American Federation of State, County and Municipal Employees, AFL–CIO, did conspire to deny plaintiff his rights as setforeth [sic] in the First, Fifth, Ninth and 14th Amendments of the United States Constitution, in that no charge was issued, or complaint lodged until after plaintiff asserted the aforesaid jurisdictional rights against Local 590. (See Exibits [sic] 17, 18, 19, 20, 21, 24, 25, 26, and 27 attached hereto).

6. Plaintiff states that the Defendant did through malicious intent, and aforethought issue a libelous and slanderous statement. In that Defendant did falsely publish that:

After an investigation, I have concluded that Bonzell Harrison, President of Local 54, University of Pennsylvania Caferteria [sic] Employees are

engaging in conduct imminently dangerous to the welfare of the local union.

This libelous and slanderous statement were [sic] placed on the bulletin boards in the units of Houston Hall, Robert C. Hill Hall, Evans House, Law School, Quad Grille, and Training House of the University of Pennsylvania. (See Exibit [sic] 17 attached hereto).

7. Plaintiff states that Defendant did through malicious intent, and afore-thought issue the libelous and slanderous statement which caused criminal charges to be brought against plaintiff which had no bases in fact, and which did in-turn [sic] cause extreme mental agitation and aggravation to plaintiff's well being. (See Exibits [sic] 17, 26, and 27 attached hereto).

8. Plaintiff states that Defendant did cause through libel and malicious slander, damages to plaintiff's mental, physical and financial well being, in that Defendant did cause suspension of plaintiff from the office of President of Local 54 without due process of law in accordance with Article V, Section 12 of the International Union's Constitution, which in-turn [sic] caused the stoppage of income plaintiff received from said union, also caused irreparable damage to plaintiff's reputation and character, plus unknown damages in that plaintiff could never run for office in the aforesaid union, because plaintiff was then, and is now improperly expelled from union membership in violation of Article X, Section 18 of the International Union's Constitution, while plaintiff's appeal was pending. (See Exibits [sic] 1 thru [sic] 32 attached hereto).

9. Plaintiff states that the Defendant did cause this Court to deny relief in prior suit based on plaintiff's ignorance of proper procedure for presenting a complaint, and request of relief, thus violating plaintiff's rights of due process, (specifically plaintiff not having prior knowledge of the law and the Courts).

.    .    .    .    .

## SUMMATION

It has been held that a union officer wrongfully removed from office and suspended from membership in the union is entitled to recover compensation for (1) The salary he would have received had he finished his term as the Union's President, (2) Damages for mental suffering and humiliation, and (3) Punitive damages. The Court also ruled that the action did not abate by reason of the death of the suspended union member but could be maintained by the administrator of his estate. [Citing case]. The pleading need not allege the different Statues [sic] or Constitutional Provision relied on, as the Court will take judicial notice of them. [Citing case].

It is a fact that criminal charges were brought against plaintiff for the [sic] allege: "engaging in conduct imminently dangerous to the welfare of the local union". It is also a fact that these aforesaid criminal charges were null prosed [sic]. It is the contention of the plaintiff that the aforesaid libelous and false charges were the direct cause of plaintiff's suspension from the office of President of the union, and eventually the improper expulsion from union membership. The plaintiff also contends that the disposition of said charges would prove beyond any doubt that plaintiff was wrongfully, and unlawfully expelled from the office of President of the union by the name of: "University of Pennsylvania Employees, Local 54, AFSCME, AFL–CIO", and the subsequent mental, physical and financial harassments and intimidations to plaintiff, would entitle plaintiff to seek and receive relief from this Honorable Court.

1. Wherefore Plaintiff prays in accordance with Labor Management Reporting and Disclosure Act of 1959, U.S.C.A. 29 Section 412, Pub.L. 86–257, Title I, Section 102, Sept. 14, 1959, 73 Stat. 523 in Civil Procedure. That being a union officer wrongfully removed from his office and improperly suspended from membership in the union is entitle [sic] to compensation in

the sum of (fifty thousand dollars) *$50,000.00* for the salary he would have received, had he finished his term of office, and further terms of office to which he may have been elected.

2. Further Plaintiff receive the sum of (forty-five thousand dollars) *$45,000.00* damages caused by the mental suffering and humiliations that have been inflicted upon him.

3. That Plaintiff receive the sum of (one thousand dollars) *$1,000.00* for punitive damages and cost of this action to plaintiff.

4. Wherefore Plaintiff demands judgement [sic] against Defendant for the sum of (ninty-six [sic] thousand dollars) *$96,000.00* interest and cost.

## II.

Plaintiff invoked the district court's jurisdiction under LMRDA Section 102, 29 U.S.C. § 412:

Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

For there to be any basis for federal jurisdiction under the LMRDA in the circumstances herein presented, the complaint would have to fall within the purview of LMRDA Section 101(a)(2) or (5), 29 U.S.C. § 411(a)(2), (5):

(2) Freedom of speech and assembly. —Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

(5) Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

These provisions of the LMRDA are not without prior interpretation in this court.

Addressing the free speech and assembly guarantee, we have said Section 101(a)(2) "gave labor organizations three specific grounds on which they could discipline members' speech. Unions could provide reasonable rules: (1) for conducting union meetings; (2) for insuring individual responsibility to the union as an institution; and (3) for preventing any interference with the union's performance of its legal or contractual obligations. . . . Following this guide, the courts have responded by making clear that labor organizations properly exercise their disciplinary powers only over a limited area of proscribed conduct inimical to the union as an entity and collective bargaining mechanism. Unless statements fall into these categories, they are protected from union action even if libelous . . . or malicious . . ." *Semancik v. United Mine Workers Dist. 5,* 466 F.2d 144, 152–53 (3d Cir. 1972) (citations & footnote omitted).

"In Sheridan v. United Brotherhood of Carpenters, 306 F.2d 152 (1962) we held that neither Title I of the LMRDA nor Section 609 affords a remedy to a busi-

ness agent of a union who has been removed from his elected office prior to the expiration of his term, for the reason that 'It is the union-member relationship, not the union-officer or union-employee relationship, that is protected.' We adhere to that ruling . . . ." *Martire v. Laborers' Local 1058*, 410 F.2d 32, 35 (3d Cir.), *cert. denied*, 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969) (footnotes omitted).

We also have made it clear that as to the protected union-membership relationship, "Section 101(a)(5) does not give the federal courts a general supervisory power over union disciplinary proceedings; the section merely provides that such disciplinary proceedings must accord the accused three specified procedural safeguards: He must be '(A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.' . . . [T]herefore . . . that a local union member is disciplined by a parent body within the union does not, constitute *per se* a denial of a fair hearing." *Ibid.* at 36–37 (footnote omitted)

From this recitation, certain conclusions are manifest. The union member is free to express views, arguments or opinions on matters of union business—even if the expressions be libelous or malicious—without fear of discipline. *Semancik v. United Mine Workers Dist. 5, supra.* Conversely, the LMRDA does not provide relief to a union officer for suspension as an officer, nor for loss of income resulting therefrom. Nor does the Act provide relief for wrongful termination from employment. What is protected is the union-membership relationship. *Martire v. Laborers' Local 1058, supra; Lewis v. American Federation of State, County*

*and Municipal Employees*, 407 F.2d 1185 (3d Cir.), *cert. denied*, 396 U.S. 866, 90 S.Ct. 145, 24 L.Ed.2d 120 (1969); *Sheridan v. United Brotherhood of Carpenters, supra.*

Thus, our task is to determine whether plaintiff has alleged in his complaint and supporting exhibits a claim against *this defendant* either for violation of the freedom of speech and assembly guarantee, under Section 101(a)(2), or for improper expulsion as a union member, under Section 101(a)(5). We emphasize that no individuals are named as defendants, nor are District Council No. 33 or the International of the American Federation of State, County and Municipal Employees, AFL–CIO. With this background, we now turn to an examination of the allegations in plaintiff's *pro se* complaint.

III.

We quickly dispose of the contention that plaintiff's complaint sets forth a claim under Section 101(a)(2), "free speech and assembly", against the named defendant. Paragraph 4 of the complaint alleges a "persecution", commenced "because of the efforts on the part of the plaintiff to prevent [Library Union] Local 590, and the District Council # 33 [of the American Federation of State, County and Municipal Employees, AFL–CIO] from infringing on the jurisdiction of Local 54. (See Exibits [sic] 18, 19, 20, 21, 29, and 30 attached hereto)." On its face, this allegation fails to state a claim under Section 101(a)(2) against *this defendant.* Moreover, we have examined the exhibits cited by plaintiff and find them no more supportive of such a claim.[1]

Similarly, we can dispose of paragraphs 6 and 7, each of which is predi-

---

1. Exhibit 18 is a letter to plaintiff from the International President, approving with reservations amendments to the bylaws of Local 54. Exhibit 19 is a letter from plaintiff to the International President acknowledging receipt of the letter marked as Exhibit 18. Exhibit 20 is a letter to plaintiff from the Secretary-Treasur- er of the International noting a change in the Local's jurisdiction. Exhibit 21 is a photocopy of a newspaper article. Exhibit 29 is a photocopy of the Local Charter issued by the International and dated August 1, 1968. Exhibit 30 appears to be a duplicate of Exhibit 29.

cated on the allegation that "Defendant did through malicious intent, and afore-thought issue a libelous and slanderous statement. . . . (See Exibit [sic] 17 attached hereto)." The brute fact is that the alleged malicious, libelous and slanderous statement was contained in a telegram to plaintiff sent by the International President. *See* Paragraph 6 of Complaint, *supra*, and Exhibit 17. Thus, such statement cannot be the basis for a claim under Section 101(a)(2) by plaintiff against this defendant for two reasons: first, the telegram was not sent by this defendant, and second, the alleged defamatory statement is not cognizable under Section 101(a)(2). As previously rehearsed, Section 101(a)(2) protects from discipline union members making statements about union affairs; it does not relate to alleged defamations running from the union organization to the union member.

■ Paragraph 5 also does not state a claim for relief cognizable under the LMRDA. Similarly, Paragraph 9 states no claim for which relief can be granted, much less one against this defendant or one under the LMRDA.

We now address those portions of the complaint—Paragraphs 1, 2, 3 and 8—in which plaintiff alludes to an improper suspension or expulsion from union membership, our purpose being to determine whether we can glean from the paragraphs and from the supporting exhibits allegations of a claim against this defendant for which relief can be granted under Section 101(a)(5). In so doing, we are mindful that on its face the complaint does not allege by whom plaintiff was suspended from union membership, nor at what time, nor for what purported reason. Paragraph 8 refers to all 32 exhibits appended to the complaint. Accordingly, we have examined each.[2]

Exhibit 1 is a letter from the District Council No. 33 representative to plaintiff, congratulating him on his appointment to fill an unexpired term as Local President. Exhibit 2 is a letter from the International. Exhibits 3, 5, 8 and 9 are letters from the Secretary-Treasurer of the International: three relate to the filing of an appeal; the last concerns an address change. Exhibit 4 is a letter from counsel for the University of Pennsylvania. Exhibit 6 is a letter from the general counsel for the American Federation of State, County and Municipal Employees, AFL–CIO. Exhibits 7 and 16 are letters from an insurance company. Exhibit 10 is a letter from a state senator. Exhibits 11 and 12 are correspondence from plaintiff to District Council No. 33. Exhibit 13 is the cover letter of correspondence from George Meany to the International President. Exhibit 14 is a letter from the NLRB to plaintiff. Exhibit 15 is a letter from the Pennsylvania Director of Labor Relations concerning plaintiff's letter to Governor Shapp. Exhibit 22 is a note from the Acting Director of the Office of the Dining Services at the University of Pennsylvania indicating that he had been advised not to pay plaintiff for 24 hours of work. Exhibit 23 is a letter from the University's Vice President for Business and Financial Affairs informing plaintiff that he would be paid for the 24 hours of work; that he remained on the University's payroll, and that "any grievance you might have with respect to your expulsion from the Union is not a matter for the University's involvement." Exhibit 28 is a photocopy of the Local's constitution and amendments. Exhibit 31 is a photocopy of an article from a union publication. Exhibit 32 is a photocopy of various of plaintiff's union cards.

■ A fair and liberal reading of plaintiff's allegations, and of these supporting exhibits, dictates the conclusion that plaintiff has failed to allege an improper suspension from union membership *by this defendant* cognizable within the framework of Section 101(a)(5). Moreover, the remaining exhibits—numbers 24–27—indicate, if anything, that it was not the Local, but the International,

---

**2.** Exhibits 17, 18, 19, 20, 21, 29 and 30 have been discussed at pp. 1281–1282 & n. 1, *supra*.

which precipitated plaintiff's removal from the union.

Exhibit 24 is a letter dated March 4, 1971, to plaintiff from Stephen A. Sheller, attorney for Local 54. In it, Sheller wrote: "This letter is to advise you that you are to cease forthwith using Local 54 stationery and letterheads. You have absolutely no right to do so. You are no longer a member of Local 54, nor an officer." Exhibit 25 is another letter from Sheller, dated February 18, 1971, which stated: "On October 1, 1970 *the International Union found you guilty* of violating several provisions of the International and Local Union Constitutions. *In addition to expelling you from the union,* you were ordered to make reimbursement in the amount of $878.94, which were monies you appropriated to your own benefit in violation of the Constitutions. To date these monies have not been paid back to the Local union." (emphasis added). Exhibit 26 is a letter signed by the acting president of the Local and other officers, stating that they had prepared charges against plaintiff and asking the International to direct all correspondence to Sheller. Significantly, this correspondence was dated June 19, 1970—more than three months before the International found plaintiff guilty of the several violations, but two weeks *after* the International President sent his telegram to plaintiff. Exhibit 27 is a letter, dated the same day as Exhibit 26, from Sheller to the International President enclosing two copies of the formal charges against plaintiff as President of Local 54.

### IV.

We have construed as broadly as possible the averments in this *pro se* complaint as amplified by the supporting exhibits, ever mindful that motions to dismiss are granted grudgingly. *See, e.*

*g., Supchak v. United States,* 365 F.2d 844, 845 (3d Cir. 1966) (per curiam). Plaintiff meticulously set forth 32 exhibits, supporting the nine conclusory paragraphs and summary of his complaint. We have concluded that he had not set forth a claim under Section 101 upon which relief could be granted against this defendant. Accordingly, the district court was correct in concluding that the action should be dismissed for lack of subject matter jurisdiction. *Cf. City of Kenosha v. Bruno,* 412 U.S. 507, 511–14, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). *See generally* C. Wright & A. Miller, Federal Practice and Procedure § 1350, especially cases collected in n. 54.

Because the International Union is not a party to these proceedings, we do not reach the question of whether certain paragraphs of the complaint would adequately state a claim against that body.

We have carefully considered each of the contentions presented by appellant and find them totally devoid of merit.

The judgment of the district court will be affirmed.

VAN DUSEN, Circuit Judge (dissenting).

I respectfully dissent because I believe Harrison's complaint, with the attached exhibits and the pre-trial memorandum,[1] states a claim under 29 U.S.C. § 411(a)(2) as against Local 54. Reading the complaint as a whole most favorably to the pro se plaintiff, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); 2A J. Moore, Federal Practice, ¶ 12.07 at n. 7, Harrison claims not only that he was removed from his union office through the libelous and slanderous statement of the International President, see majority opinion at 10, but also that he was expelled from union membership for expressing his views on the proper

---

1. This pre-trial memorandum (Document 4 in Civil No. 74–2126, E.D.Pa.) was filed promptly after defendant filed its answer and more than two months prior to August 7, 1974, when defendant filed its motion to dismiss, which was granted by the district court.

jurisdiction of Local 54.[2]  Although the LMRDA gives Harrison no right to remain a union officer, *Sheridan v. United Brotherhood of Carpenters*, 306 F.2d 152 (3d Cir. 1962), the statute does protect him as a union member from being expelled for expressing his views on union business. 29 U.S.C. § 411(a)(2). See also *Semancik v. UMW*, 466 F.2d 144, 153 (3d Cir. 1972).[3]  Thus, Harrison's allegation is sufficient to invoke district court jurisdiction under 29 U.S.C. § 412 *if* he has stated a claim against Local 54, the named defendant.  The majority concludes that nothing in the complaint or the exhibits establishes that Local 54 undertook to restrict Harrison's rights under 29 U.S.C. § 411(a)(2).  However, paragraphs 1, 4, 6 and 8 of the complaint, see majority at 1278–1279 and certain of the exhibits do, in my opinion, state a claim against Local 54.[4]

Paragraphs 1, 6 and 8 aver that Harrison was expelled from union membership.  Paragraph 4 alleges a "persecution"—presumably resulting in Harrison's expulsion—engineered by Local 54 as retaliation for Harrison's expressing his views on the Local's jurisdiction.  Exhibits 3, 23, 25, 26 and 28 establish actions taken by the Local to have Harrison expelled.  Even though the actual expulsion may not have been accomplished by Local 54, see majority at 1281, the Local's documented cooperation in effecting Harrison's expulsion surely provides a basis for Harrison's suit against the Local.  *Duncan v. Peninsula Shipbuilders Ass'n*, 394 F.2d 237, 239–40 (4th Cir. 1968); see also *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1250 (2d Cir. 1970).

Exhibit 23 is a letter dated June 4, 1971, from the University of Pennsylvania Vice President for Business and Financial Affairs[5] to Harrison.  That letter states that Addie Flowers, Secretary-Treasurer of Local 54, had instructed the University to refund all of Harrison's union dues collected after October 1, 1970.  These instructions evidence action by the Local to enforce the expulsion verdict of the International.

Exhibit 25 is a March 4, 1971, letter from Local 54's counsel, Stephen A. Sheller, to Harrison.  That letter also demonstrates that Local 54 intended to take "appropriate steps" to "enforce the decision of the International Union Trial Board" with respect to Harrison's status in the union.

Exhibit 26 is a letter of June 19, 1970, from officers and members of Local 54's executive board to the International's President Jerry Wurf.  The letter states that "[t]he undersigned have prepared charges against  .  .  .  Mr. Harrison and have requested that Stephen A. Sheller represent us in this matter."  The letter continues:

"We would appreciate it if you would direct all correspondence to our attorney, Mr. Sheller, and he has full

---

**2.** The majority states at 1281 that the complaint fails to allege the cause for Harrison's suspension from union membership.  I believe that the complaint and attachments thereto, read as a whole, do allege that suspension followed Harrison's exercise of free speech rights protected by 29 U.S.C. § 411(a)(2).  See majority at 1280–1281.

The majority also states that the time at which Harrison was expelled does not appear on the face of the complaint.  However, Exhibit No. 25 establishes that Harrison was expelled from the Union on October 1, 1970.

**3.** In the *Semancik* case, the court said at page 153:

".  .  .  whenever a union member is to be disciplined for discussing the fitness of the union leaders, *their policies* or their ad-

ministration, he may claim the protection of LMRDA's Bill of Rights" (emphasis supplied).

**4.** Not all of the exhibits which I find supportive of Harrison's claim are cited by him in paragraph 4.  However, in reviewing a grant of a motion to dismiss, the court must find the complaint, *as a whole* insufficient to state any ground of jurisdiction.  Wright and Miller, Federal Practice and Procedure, § 1350 at 551–52.  Particularly where a complaint is filed pro se, a restrictive view of the pleadings is improper.  *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

**5.** The University was Harrison's employer at the time suit was filed.

authority to handle this matter on our behalf. In accordance with our request, he is sending you an original and two copies of the formal charges against . . . Mr. Harrison."

The letter further makes clear that the Local assumed an affirmative role in Harrison's suspension.[6]

Exhibit 28 makes clear that the filing of charges by the officers and members of the executive board of Local 54 was the act of the Local, rather than the personal action of the individual authors of Exhibit 26. Exhibit 28 is the Constitution of Local 54, which provides, at Art. VII, § 7, that:

> "[t]he executive board shall be the governing body at the local union except when meetings of the local union are in session. All matters affecting the policies, aims, and means of accomplishing the purposes of the local not specifically provided for in this constitution or by action of the membership at a regular or special meeting shall be decided by the executive board."

Finally, Exhibits 28 and 3 establish that the Local must have initiated the formal action culminating in Harrison's suspension from membership. Art. VIII, § 3, of the Local's Constitution provides that "[t]he President shall appoint five (5) members of the local union who shall act as the trial body." This trial body is the *finder* of fact and, generally, the sentencing body in union disciplinary actions. See *Falcone v. Dantinne*, 420 F.2d 1157, 1160 (3d Cir. 1969). The Judicial Panel of the International, see Exhibit 3, is an appellate body that acts on decisions of trial bodies, which are organs of the locals. The International Convention, to which Harrison also appealed, see Exhibit 3, is the final appellate body within the union. See also Exhibit 23, Art. X, §§ 17 and 18, of the International's Constitution; Exhibit 3, Art. X, §§ 29–31, *id.*

Taken as a whole, then, the complaint alleges:

> (1) action by the local union in bringing charges against Harrison and enforcing the expulsion verdict entered against him, and

> (2) that such action was in retaliation for Harrison's expressing his views as to the proper jurisdiction of Local 54.

Since the expression of such views is protected by 29 U.S.C. § 411(a)(2), Harrison's complaint states a claim against Local 54.

Furthermore, plaintiff's Pre-Trial Memorandum contains this language at page 3:

> "Plaintiff was . . . eventually improperly expelled from union membership because the Defendant wanted to annul the original official records of Local 54's jurisdiction, and place Local 54 jurisdiction inside the Cafeteria of the Dining Service Department of the University of Pennsylvania, and at the same time giving aid to Local 590 to organize Local 54's lawful jurisdiction: 'All Non-Academic Employees of the University of Pennsylvania in Philadelphia'."

This court has consistently stated that the litigation will be guided by the positions which the parties take in their pre-trial documents unless manifest injustice will result. See *Ely v. Reading Company*, 424 F.2d 758, 763–64 (3d Cir. 1970); *Payne v. Nabob*, 302 F.2d 803, 806–07 (3d Cir. 1962); see also *Inter-American Chemicals S. A. v. Lavino Shipping Company*, 48 F.R.D. 353, 354 (E.D.Pa.1969) (". . . trial is limited to only those contentions which the parties' pre-trial memoranda set forth"). The district court thus erred in dismissing the com-

---

**6.** The letter contains the following language:

"We would request that in accordance with Art. V, Section 12 of the International Union Constitution, the suspension of . . . Mr. Harrison be continued upon receipt of the formal charges."

plaint for lack of subject matter jurisdiction.[7]

For the foregoing reasons, I would vacate such district court order and remand for further proceedings concerning the claim that Local 54 "had improperly suspended plaintiff from union membership" (paragraph 1 of complaint and exhibits there cited; see also, *inter alia*, paragraph 4 and summation at page 1279 of majority opinion, as well as the above-mentioned pre-trial memorandum).

---

**7.** Although the answer to the complaint averred that Harrison's suit was barred by the statute of limitations, the motion to dismiss made no reference to the statute. I express no view as to whether the suit would be barred under 12 Purdon's Pa.Stats. § 31. *Dantagnan v. I. L. A. Local 1418, AFL–CIO,* 496 F.2d 400 (5th Cir. 1974); *Sewell v. International Ass'n of Machinists,* 445 F.2d 545 (5th Cir. 1971).