William J. KOENIG, Plaintiff,

v.

George CLARK, Robert Gannone, Vincent Longo, George Ernst, Jr., Raymond Eganey, Thomas Lesinski, John Ernest, Bernard O'Brien, Stanley Paduch, Sigurd Lucassen, John MacKay, United Brotherhood of Carpenters and Joiners of America and Local 455, United Brotherhood of Carpenters and Joiners of America, Defendants.

Civ. A. No. 79–2209.

United States District Court,
D. New Jersey.

April 19, 1982.

As Amended June 3, 1982.

---

Rowand H. Clark, Sachar, Bernstein, Rothberg & Sikora, P. C., Plainfield, N. J., for plaintiff.

Theodore E. B. Einhorn, Einhorn, Harris & Platt, P. C., Denville, N. J., for individual defendants.

Theodore Sager Meth, Newark, N. J., for Local 455.

## OPINION

DEBEVOISE, District Judge.

Plaintiff, William Koenig, brings this action for damages against Local # 455 of the United Brotherhood of Carpenters and Joiners of America and ten local union officials alleging that he was discriminated against in work referrals and removed from a union office as discipline for the exercise of protected union membership rights, in violation of sections 101(a)(2), 102 and 609 of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 411(a)(2), 412 and 529. He also asserts pendent state law claims against the individual defendants for tortious interference with prospective economic advantage and breach of fiduciary duty.

The individual defendants now move for dismissal of the action as to them on the grounds that: (1) the safeguards of the LMRDA do not apply to expulsion or suspension from union office, but only from union membership; (2) plaintiff has failed to exhaust available internal union remedies; (3) plaintiff's charges against them involve "private misconduct" not cognizable under the LMRDA; and (4) absent a viable federal cause of action, the court lacks jurisdiction to resolve the pendent state claims against them. Defendants also move to strike plaintiff's claim for punitive damages on the ground that he has not alleged malice, recklessness or wanton indifference to his rights.

### 1. Subject Matter Jurisdiction

At the outset, I note that defendants have improperly characterized their motion

as one to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the *Federal Rules of Civil Procedure.* Under the well-established rule of *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), a cause of action premised upon a federal statute or the Constitution is subject to dismissal for lack of jurisdiction only if it is "wholly insubstantial," "frivolous" or "immaterial and made solely for the purpose of obtaining jurisdiction." Id. at 682–83, 66 S.Ct. at 776; *see also Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Hughes v. Local No. 11,* 287 F.2d 810 (3d Cir. 1961). Although defendants contend that plaintiff's claim does not fall within the scope of protection of the LMRDA, "the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy." *Bell v. Hood, supra,* 327 U.S. at 682, 66 S.Ct. at 776. As the courts have held in numerous cases substantially identical to this one, plaintiff has stated a sufficiently substantial claim under the LMRDA to sustain the exercise of jurisdiction. *See Lewis v. AFSCME,* 407 F.2d 1185, 1188, n. 3 (3d Cir. 1969); *Sheridan v. United Brotherhood of Carpenters,* 306 F.2d 152, 156 (3d Cir. 1962); *but see Harrison v. Local 54,* 518 F.2d 1276 (3d Cir. 1975).

Defendants' motion will be treated, therefore, as one to dismiss for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6). Where matters outside the pleadings are considered and all parties have had a reasona-

ble opportunity to submit pertinent evidentiary materials, the motion will be treated as one for summary judgment and analyzed under the standards set forth in Rule 56. *See Switlik v. Hardwicke Co., Inc.,* 651 F.2d 852 (3d Cir. 1981).

### 2. *Law of the Case*

Although the parties have not mentioned it in their briefs, I also note that grounds (1) and (2) of defendants' motion to dismiss, as well as their motion to strike plaintiff's claim for punitive damages, have already been ruled upon by Judge Fisher, the predecessor judge in this case.[1] In an oral opinion entered on November 5, 1979, a transcript of which was filed on November 15, 1979, Judge Fisher ruled that: plaintiff had standing to sue under the LMRDA for his removal from union office; that he was not required to exhaust internal union remedies; and that the allegations of his complaint were sufficient to sustain a claim for punitive damages.[2] Consequently, the disposition of defendants' present motion to dismiss must take into account the "law of the case" doctrine and any applicable exceptions. *See Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162 (3d Cir. 1981); *United States Gypsum Co. v. Schiavo Brothers, Inc.,* 668 F.2d 172 (3d Cir. 1981).[3]

### 3. *Factual and Procedural Background*

If defendants are to prevail on a motion to dismiss under Rule 12(b)(6), it must "[appear] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*

---

1. The case was reassigned from Judge Fisher to me on November 16, 1979.

2. Judge Fisher also denied a motion to dismiss the pendent state claims on grounds not asserted here, but reserved until later in the case a decision whether pendent jurisdiction should be exercised under the doctrine of *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Defendants argued in their brief that the action should be dismissed under the "private misconduct" theory but Judge Fisher did not address this argument in his oral opinion.

3. For reasons which are not entirely clear, an order incorporating the rulings of Judge Fisher's November 5, 1979 opinion has never been entered. On November 19, 1979, plaintiff's attorney submitted a proposed form of order to Judge Fisher. By letter dated November 21, 1979, one of defendants' attorneys requested Judge Fisher to "defer entering the form of order until we have received a copy of the transcript of the Court's opinion in this respect." On December 28, 1979, Judge Fisher's secretary forwarded the form of order to my secretary with the instructions: "[T]he enclosed order is not to be signed. Please put it in the office file and hold it."

*v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). For purposes of this motion, therefore, I will take the allegations of the complaint as true and construe them in the light most favorable to plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

According to the complaint, plaintiff is, and at all relevant times has been, a member in good standing of Local # 455 of the United Brotherhood of Carpenters and Joiners of America, a labor organization engaged in an industry affecting commerce within the meaning of § 3(j)(1) of the LMRDA, 29 U.S.C. § 402(j)(1).

Between March, 1975 and March, 1978, plaintiff became concerned about the operation of the union's pension and welfare funds and expressed his concerns publicly at union meetings and job sites and privately to union officials. In addition, he helped organize and became a member of various committees designed to investigate alternatives to the existing pension and welfare fund arrangements; visited the offices of the pension and welfare funds to investigate their operations; and sent written inquiries to the funds seeking information about their operations.

At a special meeting of the union local on April 12, 1978, plaintiff defeated a proposed amendment to the local's by-laws which would have increased the salary and benefits and reduced the workload of certain union officials by raising a point of order and successfully appealing it to the floor.

At a regular meeting of the union local on April 13, 1978, defendant made a request to defendant Robert Gannone, President of the local, for permission to inspect shop stewards' reports, dues check-off printouts and officers' paystubs in the local's office files. Plaintiff apparently did not receive the information he sought.

Several weeks later, on May 4, 1978, plaintiff renewed his request to inspect officers' paystubs at a meeting of the local's executive board. The board denied the request on the ground that it constituted an invasion of privacy. At the same meeting, defendant Bernard O'Brien, a fellow union member, made a formal charge to the board that plaintiff had "libelled and slandered" him at an earlier meeting by accusing him of intoxication and had "caused dissension in the union." Defendant Robert Gannone also filed written charges accusing plaintiff of "creating dissension" and "violating his Oath of Obligation to the Brotherhood." Plaintiff has not disclosed in his complaint the ultimate disposition of the charges. Presumably, they were not pursued.

On May 11, 1978, despite the charges outstanding against him, plaintiff was nominated for the position of Vice-President of Local # 455. On June 3, 1978 he was elected to the position.

Shortly after plaintiff's election, defendant Vincent Longo, a defeated candidate for Vice-President, wrote a letter of protest to William Sidell, President of the International Union, in which he falsely claimed that plaintiff had served as a contractor within the previous twelve months and thus was not entitled, under the terms of the International Union's constitution, to hold a union office. Sidell opened an investigation of the matter, and on June 28, 1978 wrote a letter to the local's recording secretary directing him to set forth the facts of the matter and the local's position. At this point, defendants Robert Gannone and George Clark, President and Business Manager respectively of the local, wrote letters to the International Union reiterating the false charges that plaintiff had served as a contractor within the previous twelve months. In addition, plaintiff charges, all of the individual defendants "willfully and maliciously failed to exercise the powers and duties of their respective offices and/or wilfully and maliciously improperly [sic] exercised the powers and duties of their respective offices in the investigation and reporting of their investigation of the election dispute."

On August 3, 1978, William Sidell ordered that plaintiff be removed from office and that Vincent Longo be installed in his place. Plaintiff wrote two letters to the International Union in September, 1978 denying that he had been a contractor during the

twelve month period prior to his election and setting forth facts to support his contention. He received no response to his letters, however, and no further action was taken on the matter by the International Union.

Shortly after plaintiff was ousted from his union office in 1978, he filed a complaint with the Department of Labor, pursuant to section 402 of the LMRDA, 29 U.S.C. § 482, contending that the union's action constituted a violation of section 401 of the Act, 29 U.S.C. § 481.[4] The Secretary of Labor, apparently finding probable cause to credit plaintiff's allegations, filed a civil suit against Local # 455. The local failed to answer and on March 5, 1979 the district court entered a default judgment ordering the local union to remove Vincent Longo from the office of Vice-President and to reinstate plaintiff in his stead. In accordance with the court's order, plaintiff was duly reinstated to the Vice-Presidency of Local # 455.[5]

In addition to removing him from office, plaintiff alleges, defendants administered the union's work referral list in a discriminatory fashion from June, 1976 through May, 1979. In particular, he claims, defendants denied him the priority on the list to which he was entitled after being laid off from a job site in February, 1978. Plaintiff filed charges with the NLRB complaining of this conduct on May 5, 1978 but withdrew the charges on June 3, 1978 after his election to the Vice-Presidency of the local.

Plaintiff does not expressly allege in his complaint a causal connection between his own actions and those of defendants. Viewing the facts in the light most favorable to plaintiff, however, as is required on a Rule 12(b)(6) motion, it can be inferred that defendants discriminated against him in work referrals and brought about his removal from union office in order to punish him for expressing his views and taking other action in connection with union affairs prior to his election to union office.

Plaintiff instituted the present action on July 25, 1979 against the International Union, Local # 455, George Clark, Robert Gannone, Vincent Longo, Stanley Paduch, Bernard O'Brien, John Ernst, John Mackay, Raymond Eganey, George Ernst, Jr. and Thomas Lesinski. Judge Fisher denied a motion by defendants to dismiss on November 5, 1979, as noted above. On November 16, 1979 the case was reassigned to me.

By stipulation dated September 10, 1980, plaintiff agreed to a voluntary dismissal of the action as to the International Union and Sigurd Lucassen, its agent, without prejudice. On November 17, 1980 an order was entered granting defendants' motion to dismiss Count I, paragraph 6, subsection (j) on *res judicata* grounds, plaintiff having failed to appear for or oppose the motion. On September 21, 1981 defendants moved for summary judgment on Count I, paragraph 6, subsections (g) through (i) on *res judicata* grounds. I denied this motion in an oral opinion on the same date and an order was entered on September 29, 1982.

At the present time, all discovery in this matter has been completed. A final pre-trial order has been signed and filed. The case is marked for trial on the April 20, 1982 non-jury calendar.

### 4. Expulsion from Union Office

Defendants move first to dismiss plaintiff's claim of unlawful expulsion from union office on the ground that sections 102

---

**4.** Section 401 of the LMRDA prescribes the procedures to be followed in the election of union officials and the conditions of their tenure. Section 402 requires the Secretary of Labor to investigate any complaint charging a violation of the provisions of section 401 and to file a civil action "against the labor organization as an entity" if he finds probable cause to believe that such a violation has occurred. The district court is empowered, upon a finding that "the violation of section 401 may have affected the outcome of an election," to declare the election void and to order a new election under the supervision of the Secretary of Labor.

**5.** Although plaintiff did not refer to the section 402 proceeding in his complaint, I found the facts stated here to be undisputed in ruling on an earlier motion by defendants to dismiss Count I, paragraph 6, subsection (j) on *res judicata* grounds.

and 609 of the LMRDA afford no protection to plaintiff's tenure in office, regardless of the union's motivation in removing him. In support of this argument, defendants rely upon a line of Third Circuit cases beginning with *Sheridan v. United Brotherhood of Carpenters*, 306 F.2d 152 (3d Cir. 1962).

Confronted with the same motion in November, 1979, Judge Fisher ruled that plaintiff could sue under Title I of the LMRDA for his expulsion from union office. Judge Fisher reasoned that since plaintiff's alleged removal from union office was for the exercise of union *membership* rights, not for his activities in office, his claims fell squarely within section 609's provision that:

It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of the Act.

Technically, Judge Fisher's ruling might constitute the "law of the case." I need not rely upon the "law of the case" doctrine, to decide this motion, however, because I believe that Judge Fisher's decision was correct.

Defendants' argument rests entirely upon a rule, originally formulated by a single Third Circuit judge in *Sheridan v. United Brotherhood of Carpenters, supra,* which has been soundly rejected by most other circuits. While the Third Circuit has continued to employ the language of *Sheridan* in subsequent cases arising under the LMRDA, those cases are factually distinguishable and it appears likely that the Third Circuit has narrowed the *Sheridan* holding.

In *Sheridan* plaintiff brought suit against his union under sections 102 and 609 of the LMRDA contending that he had been removed by a vote of the union membership from his position as business manager for

instituting a legal action against a fellow union member, a right protected by section 101(a)(4) of the LMRDA.[6] As relief, he sought back pay and benefits and reinstatement to his union office. The district court found in plaintiff's favor and awarded him back pay. The Court of Appeals, however, reversed.

Writing for himself alone, Judge Kalodner framed the question presented as follows:

Does the Labor-Management Reporting and Disclosure Act of 1959 afford a remedy to a business agent of a union who has been removed from his elected office prior to the expiration of its term by the vote of the membership of the union? *Id.* at 153.

Since defendants conceded that they had removed plaintiff from office for exercising a right protected under section 101(a)(4) of the LMRDA, Judge Kalodner narrowed his inquiry "to the question whether the removal of plaintiff from office was a form of 'discipline' as that term is used in Section 609." *Id.* at 156. He concluded that:

The language of the Section affords no support for the view that the term "discipline" encompasses removal from office. The three disciplinary sanctions that are specifically enumerated in that section—fine, suspension, and expulsion—manifest an intention by Congress to protect members *qua* members. Removal from office, on the other hand, is a sanction that can be directed only against the limited group of members who happen to be officers. We see no violation of Section 609 in plaintiff's removal from his office. *Id.*

In announcing this broad rule, Judge Kalodner noted that plaintiff, while not "wholly disagreeing with the proposition that the pertinent provisions of the Act deal with the rights of members qua members," argued that he had nevertheless stated a claim under the Act because he had been removed from his office for an act "in his capacity as an individual member rather

---

**6.** Section 101(a)(4) provides, in relevant part, that: "No labor organization shall limit the right of any member thereof to institute an action in any court ... irrespective of whether or not the labor organization or its officers are named as defendants."

than as a business agent." Judge Kalodner held, however, that:

> a meaningful distinction cannot be drawn on the basis of the capacity in which plaintiff was acting when he had Burke arrested... What plaintiff overlooks ... is the fact that an officer's conduct, whether in his individual or official capacity, affects the confidence reposed in him by the union membership, and his effectiveness as an officer. *Id.* at 157.

In support of his conclusion that the district court's decision should be reversed, Judge Kalodner emphasized the fact that plaintiff had been removed by a vote of the union membership.

Judge Hastie, concurring, also voted to reverse the decision of the district court but expressly declined to endorse the rule articulated by Judge Kalodner. In his view, plaintiff's action should have been dismissed because he had failed to exhaust available internal union remedies, as required by section 101(a)(4) of the Act. The third judge on the panel, Judge McLaughlin, dissented on the ground that the phrase "or otherwise discipline" in section 609 should be construed to include "the disciplining of a member who held a union office, by depriving him of that office." *Id.* at 165.

Sheridan, the product of a split panel, has not been accepted generally as authority for the rule that the LMRDA affords no protection whatsoever to an ousted union officer. *See DeCampli v. Greeley,* 293 F.Supp. 746, 751 (D.N.J.1968). Since the decision in *Sheridan,* the view espoused by Judge Kalodner has been rejected by virtually every other circuit which has considered the question. *See, e.g., Maceira v. Pagan,* 649 F.2d 8 (1st Cir. 1981); *Newman v. Local 1101,* 570 F.2d 439 (2d Cir. 1978), *on remand,* 597 F.2d 833 (1979); *Bradford v. Textile Work-*

ers of America, 563 F.2d 1138 (4th Cir. 1977); *Wood v. Dennis,* 489 F.2d 849 (7th Cir. 1973) (en banc); *Gabauer v. Woodcock,* 520 F.2d 1084 (8th Cir. 1975); *Cooke v. Orange Belt District Council of Painters,* 529 F.2d 815 (9th Cir. 1976).[7]

These courts have reasoned that Judge Kalodner, in focusing upon the *type of discipline* a union imposes on its members rather than the *nature of the activities* for which discipline is imposed, misperceived the intent of Congress in establishing a "bill of rights" for union members. They have pointed out that the language employed in section 609 of the LMRDA—"fine, suspend, expel, *or otherwise discipline*"—suggests Congress' intent to prohibit a broad range of official sanctions for the exercise of protected conduct, and encompasses on its face the removal of a union member from an elected office. *See Maceira v. Pagan, supra,* at 13. Furthermore, they have suggested that *Sheridan's* " 'crabbed' construction" of the statute unduly restricts the LMRDA's goals of strengthening union democracy and furthering the freedom of union members to speak out on issues of concern to all. *See Bradford v. Textile Workers of America, supra,* at 1142; *Grand Lodge of the International Association of Machinists v. King,* 335 F.2d 340, 344 (9th Cir. 1964). While "the management of a union, like that of any other going enterprise [must] command a reasonable degree of loyalty and support from its representatives," and hence can lawfully discipline an officer for conduct or speech inconsistent with his *official* duties,[8] it does not follow that it may police protected *membership* activities, and thereby interfere with union democracy, by expelling an offending union member from a union office. *Newman v.*

---

7. The Fifth Circuit held in *Wambles v. International Brotherhood of Teamsters,* 488 F.2d 888 (5th Cir. 1974), that the removal of an *appointed,* as opposed to an *elected,* union official is not covered by the LMRDA. Subsequent Fifth Circuit cases, however, have limited *Wambles* to its facts. *See Rosser v. Laborers' International Union,* 616 F.2d 221 (5th Cir. 1980); *Miller v. Holden,* 535 F.2d 912, 916 (5th Cir. 1976).

8. For substantially the same reasons, it has been held by most courts that a union officer is not entitled to the procedural protections of section 101(a)(5) when he is removed from office. *See Gabauer v. Woodcock, supra,* at 1093.

**760**

*Local 1101*, 570 F.2d at 455; *Maceira v. Pagan, supra*, at 14.[9]

The Third Circuit has continued to employ the language of the *"Sheridan* rule." *See, e.g., Martire v. Laborers' Local Union 1058*, 410 F.2d 32 (3d Cir. 1969); *Harrison v. Local 54*, 518 F.2d 1276 (3d Cir. 1975); *see also Lewis v. AFSCME*, 407 F.2d 1185, 1188, n. 4 (3d Cir. 1969). Relying upon these cases, many Third Circuit district courts have accepted Judge Kalodner's opinion in *Sheridan* "as the definitive statement of the law in this circuit." *Sipe v. Local Union No. 191*, 393 F.Supp. 865, 868 (M.D.Pa.1975); *see also Collins v. Pennsylvania Telephone Union*, 418 F.Supp. 50 (W.D.Pa.1976); *Grove v. Glass Bottle Blowers Assoc.*, 329 F.Supp. 337 (W.D.Pa.1971); *but see De-Campli v. Greeley*, 293 F.Supp. 746 (D.N.J. 1968). Were the *"Sheridan* rule" in its broadest application indeed the law of this Circuit, it would dictate dismissal of plaintiff's claim of unlawful expulsion from his union office without further inquiry. Because the Third Circuit cases which employ the language of *Sheridan* are plainly distinguishable on their facts, however, it is not unreasonable to conclude that, confronted with this case the Third Circuit would refine the *"Sheridan* rule".

In *Martire, supra*, plaintiff brought suit against his union charging that he had been discharged as business manager for "negligence and incompetence" in office without the procedural safeguards of notice and a hearing required by section 101(a)(5) of the LMRDA.[10] Writing for a unanimous panel of the Court of Appeals, Judge Kalodner disposed of plaintiff's claim of unlawful discharge as follows:

> In *Sheridan v. United Brotherhood of Carpenters*, 306 F.2d 152 (1962) we held that neither Title I of the LMRDA nor Section 609 affords a remedy to a busi-

ness agent of a union who has been removed from his elected office prior to the expiration of his term, for the reason that 'It is the union-member relationship, not the union-officer or union-employee relationship, that is protected.' We adhere to that ruling, and accordingly hold that Martire is not afforded a remedy under Section 101(a)(5) of the LMRDA by reason of his removal from office as the Union's business agent. *Id.* at 35.

Clearly, the broad language quoted from *Sheridan* was unnecessary to the Third Circuit's disposition of the case. Martire never argued, as does plaintiff here, that his union removed him from office in order to punish him for engaging in protected membership activities. Indeed, Judge Kalodner himself observed that "Section 609 . . . is clearly inapplicable to the instant case since Martire's 'discipline' in no way resulted from the exercise by him of any right guaranteed by the Act." *Sheridan's* holding with respect to section 609, therefore, was not pertinent in *Martire*.

The Third Circuit's ruling in *Martire* that section 101(a)(5) did not apply to plaintiff's removal from office is unexceptionable and did not depend upon the broad rule in *Sheridan*. Most courts have held that the use of the phrase, "or otherwise disciplined," in section 101(a)(5), unlike in section 609, was intended to exclude removal from union office, since the swift removal of offending officers is often essential to effective union management and the protection of unions "from continuing depredation while charges are being investigated and resolved." *Grand Lodge v. King*, 335 F.2d 340, 345 (9th Cir. 1964); *see also Maceira v. Pagan, supra*, at 13; *Air Line Stewards v. Transport Workers Union of America*, 334 F.2d 805, 808 (7th Cir. 1964); *Rios v. Oil, Chemical and Atomic Workers International Union*, 331 F.Supp. 511 (D.P.R.1970). If one ac-

**9.** The reservations expressed in *Newman* would seem to be most appropriately applied in the case of the removal of a union employee rather than an elected officer. *See Sewell v. Grand Lodge*, 445 F.2d 545 (5th Cir. 1971).

**10.** Section 101(a)(5) provides that: "No member of any labor organization may be fined,

suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

cepts the distinction between the scope of sections 101(a)(5) and 609 made in *Grand Lodge v. King*, and there are persuasive reasons to do so, *Martire*'s reference to *Sheridan* must be viewed as dictum.[11]

In *Harrison v. Local 54, supra*, the Third Circuit cited *Martire* and *Sheridan* for the proposition that: "[T]he LMRDA does not provide relief to a union officer for suspension as an officer, nor [sic] for loss of income resulting therefrom... What is protected is the union-membership relationship." *Id.* at 1281. It did not rely upon these background statements in rendering its decision, however, but disposed of plaintiff's prolix and somewhat vague *pro se* complaint on the quite different ground that plaintiff had failed to name as a defendant the entity which had actually caused his dismissal from both union officer and membership, the International Union. *Id.* at 1282–83.

■ As can be seen, the Third Circuit cases which have adopted the language of *Sheridan* are plainly distinguishable on their facts from the present case. None involve a union member's claim that he was ousted from union office in retaliation for exercising protected membership rights. The Third Circuit's application of *Sheridan* is not inconsistent with the view of the scope of sections 102 and 609 adopted by the majority of circuits. I conclude that plain-

tiff has stated a claim for his expulsion from union office upon which relief may be granted.[12, 13]

### 5. *Exhaustion of Internal Union Remedies*

Defendants next move to dismiss this action on the ground that plaintiff has failed to exhaust available internal union remedies. In support of this motion, defendants rely upon section 101(a)(4) of the LMRDA, 29 U.S.C. § 411(a)(4), which provides that:

No labor organization shall limit the right of any member thereof to institute an action in any court... Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof....

Confronted with the same motion, Judge Fisher ruled that plaintiff had no reasonable internal remedy to pursue under the relevant provisions of the International Union's constitution and by-laws, and therefore was not barred from immediately filing his civil suit. Because I believe that Judge Fisher's interpretation of the union's constitution was correct and because I do not believe plaintiff was required to exhaust internal remedies in any event, I will deny this motion.

---

**11.** The Third Circuit itself has acknowledged the distinction between section 609 and section 101(a)(5) suits in *Lewis v. AFSCME*, 407 F.2d 1185, 1188, n. 4 (3d Cir. 1969).

**12.** Plaintiff alleged in his complaint that he was not only removed from the office of union Vice-President in retaliation for speaking out on union affairs, but also discriminated against in work referrals. Hence, even if I were to dismiss the claims related to ouster from office, plaintiff would still have a cause of action under section 609. *See Vandeventer v. Local Union No. 513*, 579 F.2d 1373 (8th Cir. 1978) (Claim of discriminatory work referrals not within exclusive jurisdiction of NLRB).

**13.** Approximately one month after this opinion was filed, the Supreme Court held, in *Finnegan v. Leu*, —— U.S. ——, 102 S.Ct. 1867, 72 L.Ed.2d —— (1982), that a union *employee* discharged from *appointive* office by the union president because his views were incompatible with those of the president is not entitled to the protection of §§ 101, 102 or 609 of the LMRDA. The Court reasoned that the Act does not "address the issue of union patron-

age" and that "the ability of an elected union president to select his own administrators is an integral part of ensuring a union administration's responsiveness to the mandate of the election." *Id.* at ——, 102 S.Ct. at 1873.

*Finnegan* is clearly distinguishable from the present case. Here, a union *officer* charges that he was dismissed from an *elected* union position in retaliation for his exercise of protected membership rights. Such an action frustrates rather than enhances union democracy and falls within the core of the protection afforded by Title I of the Act. The Supreme Court in *Finnegan* expressly declined to decide the issues presented here: "whether the retaliatory discharge of a union member from union office—even though not 'discipline' prohibited under § 609—might ever give rise to a cause of action under § 102" or what "limits Title I places on a union's authority to utilize dismissal from union office as part of a purposeful and deliberate attempt to suppress dissent within the union." *Id.* I conclude, therefore, that my decision in this matter would not have been altered by *Finnegan* and that plaintiff has stated a claim under § 102—if not § 609—of the Act.

■ As Judge Fisher pointed out, the sections of the union constitution submitted by defendants, sections 56 and 57, do not cover suits by union members against *the union itself* for violations of the LMRDA or other state or federal laws. Rather, they provide hearing and appeal procedures for the resolution of charges against *union members*, presumably for violation of union rules.[14] Since plaintiff's rights under the union constitution are not coextensive with his rights under the LMRDA, the hearing procedures authorized under the constitution are not "reasonable" ones which must be exhausted.

Even if plaintiff did have available a reasonable hearing procedure in which he could air his claims of wrongful ouster from union office and discrimination in work referrals, it does not follow that he would be required to exhaust those procedures prior to filing suit under sections 102 and 609 of the LMRDA. Section 101(a)(4)'s provision that exhaustion of internal remedies "may be required," the Supreme Court has emphasized, "is not a grant of authority to unions more firmly to police their members but a statement of policy that the public tribunals whose aid is invoked *may in their discretion* stay their hands for four months, while the aggrieved person seeks relief within the union." *NLRB v. Industrial Union of Marine & Shipbuilding Workers*, 391 U.S. 418, 426, 88 S.Ct. 1717, 1722, 20 L.Ed.2d 706 (1968) (emphasis added). Expanding upon the scope of the district courts' discretion, the Third Circuit has held that waiver of the exhaustion requirement may be "particularly appropriate" where plaintiffs may suffer irreparable harm in their jobs or in the exercise of protected LMRDA rights; where the internal union remedies are inadequate, illusory, or "controlled by those to whom the plaintiff is opposed"; or "where the union has consistently taken a position opposed to that of the plaintiff and makes no indication that it will alter its views." *Semancik v. United Mine Workers of America*, 466 F.2d 144 (3d Cir. 1972). Courts should be "particularly solicitous," the Third Circuit held, "when the right of free speech is at stake."

■ Applying these principles to the present case, it is clear that plaintiff has stated claims which entitle him to a waiver of the exhaustion requirement. As defendants themselves concede, plaintiff has alleged in his complaint that he:

made numerous attempts to seek redress by intraunion procedures. Because the union hierarchy is controlled by defendants those attempts were rebuffed without fair consideration or hearing. Any other attempts at redress by intra-union procedures would also not receive fair consideration or hearing. Count I, ¶ 7.

Furthermore, plaintiff's allegations against the union and its officers include interference with protected speech rights, a consideration accorded special weight in *Semancik*. Finally, I note that this motion is brought (for the second time) almost three years after plaintiff filed his civil complaint. To require plaintiff to return to the union to exhaust internal union remedies at this point would wreak a manifest injustice.

For the foregoing reasons, defendants' motion to dismiss this action for failure to exhaust internal union remedies will be denied.

### 6. *"Private Misconduct"*

Relying upon the case of *Tomko v. Hilbert*, 288 F.2d 625 (3d Cir. 1961), the individual defendants argue that the action should be dismissed as to them because plaintiff has failed to allege that they injured him, within the meaning of the LMRDA, in their official capacities as officers or agents of the union.

In *Tomko*, the Third Circuit observed that sections 101, 102 and 609 of the LMRDA provide union members with "certain rights which when interfered with by a *union, its officials or its agents*, can be redressed civilly against them." *Id.* at 628 (emphasis added). By contrast, it held:

Private misconduct which incidentally may frustrate appellant's rights as a union member does not give rise to an action under the bill-of-rights section. As we have demonstrated above, it certainly was never the intention of Congress to open the federal courts to the adjudication of ordinary tort claims merely because the conduct occurs in a union hall during a union meeting and none, one, or all of the participants are union members. *Id.* at 629.

Other courts, following the lead of *Tomko*, have held that a complaint by a union mem-

---

**14.** Defendants have not submitted section 55 of the Constitution, which sets forth the activities subject to the hearing requirements of sections 56 and 57.

ber of essentially tortious conduct by one who is neither a union officer nor acting in an official capacity on behalf of the union does not state a cause of action under the LMRDA. *See, e.g., Berg v. Watson,* 417 F.Supp. 806, 812 (S.D.N.Y.1976); *Sipe v. Local Union No. 191,* 393 F.Supp. 865, 872 (M.D.Pa.1975); *but cf. Shimman v. Frank,* 625 F.2d 80 (6th Cir. 1980).

■ Defendants' motion to dismiss under the theory of *Tomko* borders upon the frivolous. Not only has plaintiff identified all but one of the defendants named in the complaint as an officer or agent of the union,[15] he specifically charges them with taking injurious action against him in their official capacities. In Count I, paragraph 6, subsection (k), for example, he asserts that defendants "wilfully and maliciously . . . exercised the powers and duties of their respective offices in the investigation and reporting of their investigation of the election dispute." Moreover, the charge that defendants administered the work referral lists in a discriminatory fashion obviously asserts a claim against them for official action.

This case, unlike *Tomko,* does not present a mere claim by a union member that a fellow member libelled, assaulted or otherwise interfered with him during the course of a union meeting. Plaintiff charges the individual defendants with official misconduct squarely within the scope of the LMRDA. Consequently, defendants' motion to dismiss the action as to them on the ground that it states a claim for "private misconduct" only will be denied.

**15.** Defendant Bernard O'Brien is not identified as an officer or agent of the union, nor is he explicitly charged with acting in his official capacity. At no point prior to oral argument, however, did defendants single out O'Brien as an improperly named defendant—their motion is addressed to all individually named defendants. I will therefore leave the question of O'Brien's liability under the LMRDA to defendants' proofs at trial.

**16.** Defendants concede that courts have generally found punitive damages to be available in a suit under sections 102 and 609 of the LMRDA. *See, e.g., Shimman v. Frank,* 625 F.2d 80, 101 (6th Cir. 1980); *Sipe v. Local Union No. 191,* 393 F.Supp. 865, 871 (M.D.Pa.1975); *cf. IBEW v. Foust,* 442 U.S. 42, 47, n. 9, 99 S.Ct. 2121, 2125, n. 9, 60 L.Ed.2d 698 (1979).

### 7. *Punitive Damages*

■ Defendants move to strike plaintiff's claim for punitive damages on the ground that "plaintiff fails to allege willful malice by defendants against plaintiff as a union member."[16] (Defendants' Brief at 19). A review of the complaint indicates, however, that plaintiff clearly has alleged malicious conduct by defendants sufficient to sustain a claim for punitive damages. *See* Complaint, Count I, ¶ 6(k); Count II, ¶ 3; Count III, ¶ 3. Accordingly, this motion will be denied.

### 8. *Pendent Jurisdiction*

Defendants' final motion, to dismiss Counts II and III for lack of pendent jurisdiction, is premised upon the assumption that plaintiff has failed to state a viable federal cause of action in Count I. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ( [I]f the federal claims are dismissed before trial, even though not insubstantial, in a jurisdictional sense, the state claims should be dismissed as well.") Since plaintiff has, indeed, stated a claim under the LMRDA in Count I, this motion will be denied.[17]

### 9. *Summary and Conclusion*

For the foregoing reasons, I conclude that the "*Sheridan* rule" is neither a sound interpretation of sections 102 and 609 of the LMRDA nor a binding rule in this circuit, and that plaintiff has stated a claim in Count I for both his removal from union office and discrimination in work referrals.

**17.** Although this court clearly has the power to exercise pendent jurisdiction, the pendent state claims plaintiff has asserted may be substantively preempted by the National Labor Relations Act. *Compare International Brotherhood of Boilermakers v. Hardeman,* 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1970) (Action under section 101(a)(5) of the LMRDA not within the exclusive jurisdiction of the NLRB) with *Local 100 v. Borden,* 373 U.S. 690, 89 S.Ct. 1423, 10 L.Ed.2d 638 (1963) (Diversity action in federal court complaining of discriminatory work referrals within exclusive jurisdiction of the NLRB).

Since neither party has raised or briefed this issue on the present motion, I will not address it further here. Since the matter goes to this court's subject matter jurisdiction, however, I request that it be briefed by both parties in their trial memoranda.

Furthermore, plaintiff may reasonably be excused from exhausting internal union remedies under the alleged facts of this case, even if such remedies are available under the union constitution. Defendants' assertion that they are charged with "private misconduct" only is at clear variance with the complaint as is their assertion that plaintiff has not supported a demand for punitive damages. Finally, the federal claim is sufficient to support pendent jurisdiction. Accordingly, each of defendants' motions will be denied.

Plaintiff's counsel is requested to submit a form of order consistent with this opinion.